Case number 12-1018 at L. Wellington Industries, Inc. Petitioner v. National Labor Relations Board. Mr. Knuth for the petitioner, Ms. Burdick for the respondent, and Mr. Fetter for the intervener. Good morning, Your Honors. Mark C. Knuth here on behalf of Wellington Industries. Your Honor, this is a case involving an appeal from the National Labor Relations Board. Wellington is an automobile parts supplier. In our parlance back in Detroit, they make parts that go into cars. They have several facilities, but the one at issue is in Belleville, Michigan, where they have approximately 125 employees in the bargaining unit. Now, this issue involving the Belleville facility, the Belleville facility has had what was called a local union, a local union, union, local union one it was called. There was a long relationship between Wellington and local union one. Local union one was affiliated in 2005 as a certified bargaining agent for Wellington and local union one. There was bargaining, but it wasn't a certified agent. So, local one is the certified agent, and you declined to bargain with the union on the theory that local one wants to bring to the table the president of 174. That's correct, Your Honor. So, if your theory, as I understand your argument, your argument is that there's a representation question as to whether the union still enjoys the support of the bargaining unit. And as long as there's a representation question, we shouldn't have to bargain with the head of 174 on the other side. That's exactly my argument. And what I don't quite follow about that is, if there's in fact a representation question, you wouldn't have to bargain at all. Am I understanding the principles correctly? I think that would be correct, Your Honor. I think that is a correct assessment. But you didn't say that. What you were objecting to was having to bargain with a team that included a particular person. That's correct, Your Honor. The idea being that the affiliation occurred, and the affiliation offered a question regarding representation. And the company wanted to do what its employees wanted. They had a petition that was filed by 75 employees of 125 that said, we don't like this affiliation. Something's not right. It doesn't smell right. And the company tried to go ahead and keep peace, industrial peace, yet live with the wishes of the employees and try to follow through. Because I believe there is a question of representation. Now, if there's a certified unit and there hasn't been any affiliation effort, let's just suppose there hasn't been any affiliation effort. But what the certified union on the other side says is, look, I want to bring, as part of my negotiating team, the head of 174. He's an expert. He's a good person. He really helps us think through these issues. It's going to behoove us to bring him to the bargaining table. Would you take the position that you could object to their inclusion of that individual on their team? That's the ground rule issue, Your Honor. The parties agreed to ground rules as to who would be in the bargaining unit. There are two sets of ground rules. They're in the appendix. The parties would have to agree to bring another person or add another entity into the bargaining arena based on those ground rules. I think that's different than what you're asking about, you know, from an NLRA perspective. Right. From an NLRA perspective, I don't think you'd have much ground to challenge the inclusion of a particular person as part of the bargaining team. I believe, Your Honor, that, well, you're asking me a question sort of in a vacuum. I mean, as it relates to the facts of our case, I think that the fact that this gentleman who wanted to come, the president of the UAW local who wanted to sit in on the bargaining session, he was there not as an expert. He was there as the representative. The record is full of examples of attorneys for the local saying that the UAW is the new representative of, you know, is going to be the exclusive bargaining agent, almost supplanting Local Union 1, changing the identity. So that goes back to the question of whether or not there was a question of representation. So your argument is, I'm sorry, just to round it out just real quick. So your argument is not that he couldn't be part of the team as an additional member, as an additional expert member. Your argument is that his representation, his appearance as part of the team manifests as a question of representation. And that's really the gravamen of your objection is that that... I believe that's correct, Your Honor. You've stated that correctly. I mean, it's all about the question of representation. His presence there, they have a right. I'll concede there's case law. Their brief is loaded with case law on the issue. I'm aware of it, that they have a right to hire somebody, just like my client would have a right to hire somebody. But the parties have to agree who appears at these proceedings. In this case... Did you ever at any time, did your client ever at any time say, we no longer recognize Local Union 1? I don't believe that's part of the record, Your Honor. No. In fact, we've got an agreement with them currently. And you bargained with Local Union 1? Yes. Yes. So how are you raising a representation question when you are recognizing the representation of Local Union 1? Well, I guess that goes back to the affiliation question, Your Honor. The question of whether or not this Local Union 1 has been transformed into another entity or not, whether it was the way this all came about, Your Honor, was that there was a meeting. There was not good notice for this meeting. Twenty-five percent of the union members of Local Union 1 showed up to vote as to whether or not the affiliation was proper. It was a situation where that's... If you have a union election, if there's a question of representation, and the NLRB comes in and says, well, we're going to have an election to determine who's actually the proper representative here, the election would require more than a 50 percent showing of the UAW in this case that they were the party that the employees wanted to have represent them. But you want us to pass on that question even though the board said we're not passing on that question and we don't have to because we see the case differently. Yeah. So you're asking us to decide something that the board didn't decide. How do we have jurisdiction to do that? Well, I think the administrative law judge did reach that issue. In addition, there was another petition filed by the company when they received this petition from 75 of the 125 employees requesting, you know, a change. That petition was filed, which the court, the NLRB considered and said that they weren't going to consider it. They dismissed it. So I think that that issue was considered. It was considered by the ALJ. Right. And then the board said, yeah, that was one of the grounds, you know, that the ALJ found, but we don't have to reach that ground. I mean, on review, we're reviewing the board's order and the board didn't decide that issue. But you want us to decide it even though the Well, I think it's part of the record, Your Honor. How under Flying Food Group do we have jurisdiction under the statute as interpreted by Flying Food Group? Your Honor, I'm not familiar with that case as I stand here. Maybe I can answer your question on rebuttal. But I think that it's part of the record. I think that the ALJ addressed the issue. It was addressed in the opinion regarding that. That it's part of the record. And the NLRB did consider the issue as part of a Maybe I'm misunderstanding your argument. I thought part of your argument, maybe you are making the argument, I think you are in a brief, that we ought to decide that issue. But is part of your argument that the board was wrong to say that it didn't need to decide the issue and therefore it should go back down so that the board can pronounce on the issue on which the ALJ did? Well, that certainly would be an option to have them go back and opine on that issue if that perhaps is an appropriate remedy. Because I think it's hard to read the board's decision anyway other than what Judge Wilkins said, which is that we don't need to pronounce on that issue. Even though the ALJ did, we don't need to pronounce on that issue. And if that's the case, it's hard to see how we as a reviewing court can pronounce on the issue when the administrative body has affirmatively decided not to. Right. Well, I think that a reconsideration motion would have been futile in this case. I think we've addressed that in our reply brief. We deal with that issue somewhat in detail. So, yeah. Anything else? My question is, but I guess we're going over old ground here, but how can you raise representation as an issue when you're bargaining? Wouldn't that have to come first? Well, I don't think it forecloses that possibility. We already had a bargaining relationship with the union. As we've indicated in our brief, the way in which the change happened, without much notice to the employees, the change in the way that the union looks. Well, it's clear that you're responding to a concern expressed by employees about the affiliation. But my question is just, didn't you have to resolve that before you bargained with this union as it was changed? Well, I mean, as a practical matter, Your Honor, I don't know that it was possible to do that in light of the pressure that we were under to continue operating a business and continue working and so forth. So there were some practical considerations there to try to just keep moving forward. Okay. Thank you. Good morning. May it please the Court, Ruth Burdick, appearing for the National Labor Relations Board. Your Honors, I'd like to just begin where we left off, which is simply that this Court reviews the Board's issue simply because the theory of the complaint was that the company conditioned unlawfully bargaining with absence of Mr. Zimmick at the table. That was the theory of the complaint. That was what the ALJ found. Yes, the ALJ did cover all arguments. Very often ALJs do that in order to tee up arguments in case the Board disagrees with them. Here the Board very reasonably decided that it was because it is no defense to this unfair labor practice, which was conditioned bargaining on exclusion of one member from the bargaining committee. Here, Mr. Zimmick's status as an affiliated union officer, as a non-affiliated union officer, makes no difference whatsoever. Parties are free and must choose their own representatives, and one side must bargain with the other representatives that appear at the table unless there's some extraordinary So I think it's hard to disagree with that proposition so that the union gets to pick its team. If their argument is that we're not taking issue with that proposition, what we're taking issue with is an antecedent question, which is whether there was a question of representation in the first place. Our argument is that there was an affiliation and we don't have sufficient indicia that the employees in fact support the affiliation, so we're bargaining with a new entity. And if they make that argument, then at that point, isn't the question of representation issue one that the Board has to address, as the ALJ did? No, Your Honor. Actually, and just to be clear, parties can waive different challenges to a union's status by bargaining. In my opinion, they did that here. I don't see any reason whatsoever that the Board had to reach these defenses simply because under established law, board law, as adopted by the circuit courts, you have to show an extraordinary circumstance to show that the proceeding with bargaining would have been sufficient to make that burden. And if shifted the case, you know, reading our briefs are a little bit like ships that pass in the night, simply because they're raising issues that simply are no defense to the unfair labor practice as alleged and as found. So what would they do? An employer can make an argument that there's a question of representation, and because there's a question of representation, we don't have to bargain with anybody. But they can raise that argument in here. Now, first of all, I want to make clear that this prior petition, the RM petition, that an employer calling for an election, that's what they filed with the regional director in another case. That's not even in the record here. Right, but there's no opportunity for judicial review of that. No, there's no opportunity. So then in order to press that claim and get judicial review of it, I take it the way an employer would normally do that is to then deal with that issue in a ULP proceeding. That's my understanding, Your Honor. This is a very unusual situation. Typically, we have a certification that the board has issued, which obligates them to bargain. They refuse, and then the case comes to you, and then they can look back at pre-election hearings and those sorts of objections. It's a typical test of certification. Here there is, with this kind of issue, it's very unusual for a regional director's administrative dismissal of a petition. This is a very, very specific category where the regional office receives a petition, they undertake an investigation, and they look at the facts and the evidence provided by whoever files the petition. And here they found that there was no question of majority support that the Local 1 held. So the board then reviewed that, as the company asked them to do, and the board upheld the dismissal. And that kind of administrative dismissal, not based on a hearing or any other evidence, but just an investigation, that's the end of the process. If nothing had happened beyond that, we wouldn't be here talking about it. There is no review of that dismissal for this court. The only way it could come to this court is if it was a legitimate defense against an unfair labor practice. They would have had to refuse to bargain. I believe that's the only way they could have come here, because they're still recognizing Local 1. So your argument is that by bargaining they've waived that argument? Well, that's not my argument. My argument is board counsel's represent the analysis that's provided by the board in its decision. Now, I'm asking, I'm trying to address questions you're asking, and I'm giving my extent. No, but I want to know, I think we want to know what your argument is, because what the board said in its order is that this question of representation issue is irrelevant. Yes, it is. It's irrelevant to this unfair labor practice. And are you saying it's irrelevant because they waived that matter by bargaining? It's irrelevant because, no, no, no, I was trying to answer unfair labor practice law in general. Here, the board found it was irrelevant because it's not a defense to this unfair labor practice. They would have to show some extraordinary circumstance with regards to Mr. Zimmick being at the table that would have interrupted bargaining. Well, let's suppose that they actually raise a legitimate question of representation. Suppose the ALJ was wrong. The ALJ's opinion is still wrong. Can you just bear with me one second? Suppose that there is a legitimate question as to representation, and they want to raise it in the context of a ULP proceeding, which is the only way they can raise it. So they say, there's a question as to representation. We understand that the regional director found that we're required to bargain, but we disagree with that. They would have just refused to bargain, period. So then it all comes back to the fact that they didn't refuse to bargain, so that is your argument. Or else I'm not quite following how it would be irrelevant. The board, I should note that there's three Wellington cases, and this defense is being asserted in three different instances where they either hear that it was contract negotiations, and also there's a Wellington 2, which is a former recess board case that was revanded and the board reissued. It's now under motion for reconsideration, so they've learned something. And the third Wellington case is actually pending before this court, and it's being held in advance, pending decision in this case. I just think it's very important. I realize it's not exactly an answer to your question, but I wanted to make sure that that's understood. And I believe in those additional decisions, the board presented the same reasoning it did here, which is this is just simply not a defense to the unfair labor practice. Well, suppose they had refused to bargain. Okay, so now we're, I'm in a hypothetical. Yeah, well, suppose they had refused to bargain, and the reason they refused to bargain is they say there's a question of representation. We're not required to bargain with that entity over there because they, we've raised a question of representation, and we think we're right on it. I'm sure the union would have then filed an unfair labor practice charge, and if there was no bargaining, I'm sure that the regional director probably would have issued a complaint. A hearing would be held, and then all the issues would have been fully litigated, and at that point could be, depending on what the board found, eventually end up before this court. But that is not the case here. There's no record on this, on these issues that they're raising, and yes, maybe the ALJ did more work than was necessary. But this case is simply not teed up for the union. But if there had been a refusal to bargain, then no one would say, I take it, that the issue is irrelevant. The issue of question of representation is irrelevant. Somebody has to decide that. Well, it's very often that employers will refuse to bargain and claim that the other side lacks majority support. They're in the land of Levitt's furniture where you'd have to show that the majority of the bargaining unit no longer supported the union. That is a completely different case than here. There's no record. There's no development of this issue. There's actually no finding here in this case on this record that the regional director dismissed their petition. I mean, that's a separate case. That case was not included. Yeah, so I guess you may very well be right that as to the merits of whether there's a question of representation, a legitimate one, that the ALJ got it absolutely right, and there isn't one. I guess what I struggle with a little bit is why it's irrelevant. And it sounds like the reason it's irrelevant is that they just did it the wrong way. They should have refused to bargain. Well, the other thing is that they're only refusing to bargain with one person here, one member, one representative. In different contexts, in different cases here, it's contract negotiations. When you refuse to bargain with one individual representative, that's a different line of cases than they are citing and trying to pull us over into a different area of law. We're in a very simple area of law where the board law is very clear. The courts have adopted that view and accepted it. And here they showed no extraordinary circumstances. They showed no impossibility or futility with proceeding with the contract negotiations if Mr. Zimmick was sitting at the table. That is the theory of the case. That's the defense they needed to put on, and they failed to do so. I'm very happy to answer any additional questions. But if there are none, the board asks that you please enforce this order in full. Thank you. May it please the court. I want to address, I have very limited time, so I'd like to address one issue from the point of view which is important for my client. Before I get to that, I just want to address a couple minor issues that were raised in Petitioner's oral argument. One is this issue of the ground rules, that we would have to seek an agreement from the employer in order to add to or subtract from our bargaining team. And I will point you to the ground rules which are General Counsel's Exhibit 9, which they just don't say that. They say nothing about who's on the bargaining team, who's not on the bargaining team. Moreover, they specifically say that all parties preserve all rights that they have. And the union clearly has a right to bring whoever they want with some minor exceptions to the bargaining table. The other thing is that he mentioned that this petition that was signed addressed the merits of the affiliation. On its face, it does not. People signed that saying, I would like to have a re-vote. The vote was unfair. It does not address whether those people want to be affiliated or don't want to be affiliated with a larger institution. And he doesn't also address that the union, which believes in workplace democracy, undertook that issue. And at their very next local union meeting, there was a motion to have another vote, of which the membership, after discussion and understanding all of the issues involved, voted not to have another vote. And that brings me to my primary point, is that these are internal union issues. Who a union decides to merge with, who a union decides to affiliate with, for whatever reasons they may do that. In this case, having a very small union with no resources, no ability to combat a rather large auto supplier, to merge with a larger institution that has decades and decades of experience in negotiating contracts in the auto supplier industry, in the auto market generally, that represents the big three, makes perfect sense that they would want to do that. And obviously, there's a lot of animosity here in which the employer does not want that larger voice and that better voice of its employees. But frankly, it shouldn't have much of a say in that. It is an internal union matter, who they affiliate with. But suppose you really didn't believe in workplace democracy, and the leaders of the union just made a decision that they would like to affiliate with this larger union, and there really were objections from the employees. Would they just be precluded from trying to raise that issue? They would not be precluded. They would have the ability at the appropriate time to file a decertification petition if they're unhappy. They could go out and attempt to start a new independent union. They could start Independent Union Local 2, if they wanted, and then seek to supplant the affiliated Local 1. So there are remedies that they could do. And when those times had come, which was at the time towards the end of the contract, they didn't do that for purposes of the record. There's been no more issues or seeking of votes or anything like that at that facility. It has somewhat normalized in the relations. So they do have an opportunity. And they didn't take that opportunity ultimately, which was after the record of this closed. So they're not without that. But let's get to the legal point of it, which is in Seattle First, the Supreme Court specifically stated that both the employer and the board really don't have a say, because of statutory statements of public policy, in the internal workings of a union. And there are exceptions in affiliations. If there's a question regarding representation, there can be an election in different ways. And that can be tested through, these things are normally tested, refusal of bargain, and tested through an unfair labor practice, which was not done in this case. And I know I'm out of time, so I'm just going to briefly wrap this up. But in Seattle First, they say the congressional intent of the NLRA does not give the board or the employer a say. An example of that is ratification. Ratification of a contract, which is obviously very important to members. The law is clear that the union can have that ratification meeting however they want. They can have the members vote, they cannot have the members vote. Obviously most unions have the members vote, because we believe in workplace democracy. But that's not required. And the same thing in Seattle First, or in Kravis Center, which this court decided, there was no membership vote at all. And this court upheld the NLRA decision, saying we don't question the due process element. On an affiliation. On an affiliation, yes. So with that, your honors, thank you very much. Thank you. All right. We'll give you two minutes. I just quickly want to respond to a couple things. I mean, the whole concept of workforce democracy, I mean, this whole case is about lack of democracy and the way this thing all shook out. That 25% of these employees were, you know, got to vote on this affiliation, and then 10 days later 75% of them objected to it. So if there's any kind of lack of workforce democracy, it happened with the affiliation. So that's kind of a problem I see in that. In terms of the Seattle First case, Seattle First deals with, you know, a situation where, you know, it's the Supreme Court, and it's a question of representation. I think in this case, but for any technicalities, procedural technicalities, I think we have a very strong technical, strong question of representation based on the facts rolled out in this case. So it would really be a shame. It's going to be the employees who are the ones that lose as a result. They have been able to do what they've chosen to do, what they've tried to do and been thwarted from doing. So thank you for your time. Thank you. The case will be submitted.
judges: Brown, Srinivasan, Wilkins